IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| eScholar LLC, | |
| Plaintiff, | |
| vs. | 8:20-CV-135 |
| Nebraska Department of Education; Dean Folkers, in his individual capacity; and Matt Hastings, in his individual capacity, | MEMORANDUM AND ORDER |
| Defendants. | |

This matter is before the Court on plaintiff eScholar LLC's motion (filing 5) for preliminary injunction and defendants Nebraska Department of Education (NDE)'s, Dean Folkers', and Matt Hastings' motion (filing 31) to dismiss. eScholar claims that the defendants breached a software license agreement by reverse-engineering its software, and in doing so infringed its registered copyrights and violated the Nebraska Trade Secrets Act, Neb. Rev. Stat. § 87-501 *et seq. See generally* filing 16. Defendants argue that they are all immune from suit in this Court under the Eleventh Amendment.

For the reasons set forth below, the Court will deny eScholar's motion for preliminary injunction and grant in part and deny in part defendants' motion to dismiss.

## I. BACKGROUND

The plaintiff, eScholar, is a software and systems developer specializing in products for educational institutions. Filing 16 at 5. eScholar's core software product is the Uniq-ID© system, which permits licensees, including NDE, to

assign and manage unique identifiers for students in K-12 schools, early childhood education programs, and post-secondary public universities. Filing 16 at 10. The software also collects data under a student's profile and generates reports that are helpful in preventing duplicate records for any one student (e.g., when a student changes schools or districts). *See* filing 16 at 6, 10-11; filing 16-9 at 2.

The plaintiff first developed Uniq-ID© in 2003 and it has evolved through 11 versions, eight of which have copyright registrations with the United States Copyright Office. Filing 16 at 5-7, 12-13; *see* filing 16-1; filing 16-3. According to eScholar, it has invested and continues to invest millions of dollars and substantial effort to develop, commercialize, maintain, and improve the Uniq-ID© system. Filing 16 at 5-10. And to protect its investment, eScholar has taken steps to protect its intellectual property by registering copyrights, prominently displaying those copyrights, and including provisions restricting a licensee's use and disclosure of its products and other confidential information. *See* filing 16 at 14-16.

On November 1, 2004, eScholar and NDE entered into a Software License Agreement (filing 16-2) for the Uniq-ID© system. Filing 16 at 10; filing 16-2 at 2. The License Agreement was executed by Polly Feis, Deputy Commissioner of NDE, and Wolf Boehme, President of eScholar. Filing 16-2 at 5. Before executing the final License Agreement, Boehme and representatives from NDE negotiated the terms of the agreement and exchanged draft agreements. *See* filing 37-1 at 1-2; filing 37-3. Particularly relevant to the present motion, a forum selection clause was contained in both the draft agreement and the final agreement, which read:

**12. Governing Law.** This Agreement will be governed by the laws of the State of Nebraska, without reference to conflicts of law

principles. The parties consent to the jurisdiction of the federal and state court of Nebraska for any legal action arising out of this Agreement.

Filing 16-2 at 5. No changes were suggested by NDE to the forum selection clause, and at the time of execution, NDE provided eScholar with a Contract Routing/Approval Form which had a box checked next to the statement "[s]ufficient legal authority exists to contract for these services." Filing 37-4. The form was signed by S. Summers as NDE's general counsel, and indicated that either the Commissioner or a Deputy Commissioner had to sign the contract. *See* filing 37-4.

NDE and eScholar maintained their contractual relationship from 2004 until January 15, 2020, when Dean Folkers, NDE's Chief Information Officer, e-mailed Boehme a memorandum stating that NDE would not be renewing its license for Uniq-ID© for 2020. Filing 16 at 1, 16; *see* filing 16-5 at 2-4. Boehme asked when the termination was to be effective, and Folkers responded that it was meant to be retroactive to November 1, 2019. Filing 16 at 16; *see* filing 16-5 at 2. After receiving the termination notice, eScholar learned that NDE had replaced Uniq-ID© with what NDE calls the "ADVISOR Person ID" system. Filing 16 at 16.

eScholar alleges that NDE reverse-engineered the Uniq-ID© system and improperly used its copyrighted work to create ADVISOR in violation of the License Agreement and state and federal law. *See* filing 16 at 17. Specifically, eScholar suggests, at minimum, ADVISOR's "Compare" web page and "Student Information" web page impermissibly copy data fields, layout, look, and feel from Uniq-ID's© own "Compare" and "Individual Person Information" pages. *See* filing 16 at 18-21. Matthew Hastings, the final defendant in this case, is a Senior Administrator of Data, Research and Evaluation for NDE.

Filing 16 at 2. And according to eScholar, Hastings and Folkers are both responsible for the use of the ADVISOR system and violations of eScholar's copyrights. Filing 16 at 1-2.

## II. PROCEDURAL HISTORY

eScholar filed suit in this Court on April 6, 2020 against NDE claiming (1) copyright infringement and (2) breach of contract. Filing 1. And on April 7, 2020 it filed its motion for preliminary injunction under Fed. R. Civ. P. 65 asking the Court to prohibit NDE from using the ADVISOR system; enjoin existing and future violations of the United States Copyright Act, 17 U.S.C. § 101 *et seq.*; and prohibit continued misappropriation and publication of its trade secrets. *See* filing 5.

But on April 13, 2020 the Court ordered eScholar to show cause why its copyright claims should not be dismissed for lack of subject matter jurisdiction. Filing 14. Specifically, the Court asked why the Supreme Court's decision of March, 23, 2020 in *Allen v. Cooper*, 140 S. Ct. 994, 1007 (2020), holding unconstitutional Congress's attempt to abrogate state sovereign immunity in The Copyright Remedy Clarification Act of 1990 (CRCA), didn't require dismissal. Filing 14 at 3.

In response, eScholar filed an amended complaint (filing 16) alleging that NDE consented to federal jurisdiction through the forum selection clause contained in the License Agreement. Filing 16 at 2-3. It also added Folkers and Hastings as defendants, alleging jurisdiction was proper pursuant to *Ex Parte Young*, 209 U.S. 123 (1908). Finally, eScholar now claimed (1) rescission and damages for breach of the License Agreement against NDE, (2) copyright infringement against NDE, (3) violation of the Nebraska Trade Secrets Act against NDE and (4) copyright infringement against Folkers and Hastings. *See* filing 16 at 23-31. eScholar seeks both monetary damages and injunctive relief

on its copyright and trade secrets act claims against NDE and solely injunctive relief against Folkers and Hastings. *See id.*

On May 29, 2020 defendants filed a motion to dismiss based on Fed. R. Civ. P. 12(b)(1)—each defendant argues that Eleventh Amendment sovereign immunity prevents this court from exercising jurisdiction over eScholar's claims.[1] *See* filing 31, filing 32.

## III. STANDARD OF REVIEW

### 1. MOTION TO DISMISS

A motion pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges whether the court has subject matter jurisdiction. The party asserting subject matter jurisdiction bears the burden of proof. *Great Rivers Habitat Alliance v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010).

Rule 12(b)(1) motions can be decided in three ways: at the pleading stage, like a Rule 12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts. *Jessie v. Potter*, 516 F.3d 709, 712 (8th Cir. 2008). A court deciding a motion under Rule 12(b)(1) must distinguish between a "facial attack'" and a "factual attack." *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015). In a facial attack, the Court merely needs to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction. *Id.* Accordingly, the Court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). *Id.*; *Hastings v. Wilson*, 516 F.3d 1055, 1058 (8th Cir. 2008).

---

[1] Defendants also move for dismissal under Fed. R. Civ. P. 12(b)(6), filing 31, however, their briefs on the motion only address immunity and jurisdiction, *see* filing 32, filing 38. Thus, the Court will only discuss the arguments actually presented by defendants.

Conversely, in a factual attack, the existence of subject matter jurisdiction is challenged in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, may be considered. *Branson Label*, 793 F.3d at 914.

Here, the defendants raise a factual attack to subject matter jurisdiction. Thus, eScholar does not enjoy the benefit of the allegations in its pleadings being accepted as true by the Court, and the Court will decide the present motion on the full record before it, including matters outside of the pleadings. *See id.*; *Osborn*, 918 F.2d at 729-30. The Court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Osborn*, 918 F.2d at 730.

## 2. MOTION FOR PRELIMINARY INJUNCTION

A preliminary injunction is an extraordinary remedy and the party seeking injunctive relief bears the burden of proving that the relevant factors weigh in its favor. *MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1015 (8th Cir. 2020). A plaintiff seeking a preliminary injunction must establish four factors showing such relief is warranted: he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.*; *Dataphase Sys., Inc. v. C L Sys., Inc.* 640 F.2d 109, 114 (8th Cir. 1981) (en banc). While no single factor is determinative, the probability of success factor is the most significant. *MPAY Inc.*, 970 F.3d at 1015; *Dataphase Sys., Inc.*, 640 F.2d at 113.

## IV. DISCUSSION

### 1. SOVEREIGN IMMUNITY

Sovereign immunity encompasses two separate, but related, concepts: state sovereign immunity (a.k.a. common law sovereign immunity) and Eleventh Amendment[2] immunity (a.k.a. constitutional sovereign immunity). *Magnolia Venture Capital Corp. v. Prudential Sec., Inc.*, 151 F.3d 439, 443 (5th Cir. 1998); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 306 (1990); *Sherman v. Curators of Univ. of Mo.* 16 F.3d 860, 862 n. 2 (8th Cir. 1994). And a State may waive its common law sovereign immunity without waiving its Eleventh Amendment immunity under federal law. *Feeney*, 495 U.S. at 306. In other words, a State may consent to suit in its own courts without also consenting to suit in federal court. *See, e.g.*, *Fla. Dep't of Health and Rehab. Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 150 (1981) (per curiam).

The Eleventh Amendment generally bars suits by private citizens against a State in federal court, *Balogh v. Lombardi*, 816 F.3d 536, 544 (8th Cir. 2016), particularly those suits that seek retroactive relief for violations of federal law that would require payment of funds from a State treasury, *United States v. Metro. St. Louis Sewer Dist.*, 578 F3d 722, 724-25 (8th Cir. 2009). But the amendment does not automatically divest the federal courts of jurisdiction. A State may waive the defense and voluntarily submit to jurisdiction in federal court. *Id*. at 725. Congress may also abrogate States' Eleventh Amendment immunity with "unequivocal statutory language" combined with "a valid

---

[2] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

- 7 -

exercise of constitutional authority." *Allen*, 140 S. Ct. at 1000-01. Finally, the immunity provided by the Eleventh Amendment extends to State agencies as well as State officials acting in their official capacity. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007). But the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), permits State officials to be sued in federal court for prospective injunctive relief when the plaintiff alleges the officials are acting in violation of the Constitution or federal law. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269-70 (1997); *Monroe*, 495 F.3d at 594; *Missouri Child Care Ass'n v. Cross*, 294 F.3d 1034, 1037 (8th Cir. 2002).

As previously mentioned, *Allen v. Cooper* held that Congress did not validly abrogate State Eleventh Amendment immunity through the CRCA. 140 S. Ct. at 1007. So, for eScholar's claims against NDE to survive, it must show that the forum selection clause in the License Agreement effectively waived the State's immunity. And for eScholar's claims against Hastings and Folkers to survive, it must show that *Ex Parte Young* and its progeny permit jurisdiction. The Court will address these arguments in turn.

(a) Waiver by License Agreement Forum Selection Clause

The test for determining whether a State has waived its immunity from federal court jurisdiction is a stringent one. *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999). A State may waive immunity by voluntarily invoking jurisdiction or by making a "clear declaration" of its intent to submit to such jurisdiction. *Id*. at 675-76; *Entergy, Ark., Inc. v. Nebraska*, 210 F.3d 887, 896-97 (8th Cir. 2000). Thus, a State does not consent to suit in federal court merely by consenting to suit in its own courts, by stating its intent to "sue and be sued," or even by authorizing suits against it in "any court of competent jurisdiction." *College Sav. Bank*, 527 U.S.

at 676; *Entergy, Ark., Inc.*, 210 F.3d at 897 (internal citations omitted). In other words, waiver of a State's immunity cannot be implied or construed from the circumstances, but rather must be clearly evidenced by affirmative acts. *See College Sav. Bank*, 527 U.S. at 676-77.

And the Court will give effect to a State's waiver only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction. *Feeney*, 495 U.S. at 305-06. Courts must indulge every reasonable presumption against waiver. *College Sav. Bank*, 527 U.S. at 682; *Van Wyhe v. Reisch*, 581 F.3d 639, 653 (8th Cir. 2009). Any ambiguity in the existence or scope of a waiver of Eleventh Amendment immunity must be construed strictly in favor of the sovereign and not enlarged beyond what the language requires. *See United States v. Nordic Vill. Inc.*, 503 U.S. 30, 34 (1992); *Van Wyhe*, 581 F.3d at 653.

So, the question is whether the forum selection clause in the License Agreement is a clear, express, and unequivocal declaration of consent to suit in federal court. NDE argues it is not for three reasons: (1) NDE is not authorized to waive the State's Eleventh Amendment Immunity because the Nebraska Constitution requires legislative action to do so, (2) the State Contract Claims Act is a limited waiver of sovereign immunity and provides eScholar's exclusive remedy under the License Agreement, and (3) the forum selection clause is ambiguous and therefore should be construed against eScholar. *See* filing 32 at 2-6; filing 38 at 7-9. But eScholar asserts that Feis, as Deputy Commissioner of NDE, had authority to waive immunity, and did so by signing the License Agreement with an unambiguous forum selection clause. *See* filing 35 at 5-12. The Court agrees.

According to NDE, only an act of the Legislature can waive Nebraska's sovereign immunity under article V, section 22 of the Nebraska Constitution[3] and the Nebraska Supreme Court's interpretation of that provision. Filing 32 at 3. But whether a particular set of state laws, rules, or activities amounts to a waiver of the State's Eleventh Amendment immunity is a question of federal law. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 623 (2002).

Under federal law, generally a State official may waive the State's immunity only where specifically authorized to do so by that state's constitution, statutes, or decisions. *Santee Sioux Tribe of Neb. v. Nebraska*, 121 F.3d 427, 431-32 (8th Cir. 1997) (citing *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 467 (1945)). However, the Court in *Lapides* held that the Georgia attorney general's voluntary removal of a lawsuit[4] from state court to federal court waived Georgia's Eleventh Amendment immunity. 535 U.S. at 624. In doing so *Lapides* overruled *Ford Motor Co.* insofar as it held a state attorney general did not have explicit authority to waive Eleventh Amendment immunity despite his statutory authority to make litigation decisions. 535 U.S. at 623. So, as a matter of federal law, Eleventh Amendment immunity may be waived, at least in this limited context, by a State official with apparent authority.

---

[3] "The state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought." Neb. Const. art. V, § 22.

[4] The Court limited its holding to lawsuits involving state-law claims in respect to which the State has explicitly waived immunity in state court, as that was the precise situation presented by the facts. 535 U.S. at 617.

Here, eScholar argues that under article VII, section 2 of the Nebraska Constitution,[5] the Commissioner has broad powers to supervise and administer the school system, and perform other activities as the Legislature directs, which necessarily encompasses the power to contract. *See* filing 35 at 10. And eScholar points to three Nebraska statutes that it contends give the Commissioner the power to contract subject to a delegation of authority by the Legislature. *See* filing 35 at 10-11. In particular, eScholar argues that Neb. Rev. Stat. §§ 79-301(3), 79-305, and 79-306 empower the Commissioner of Education to "provide necessary educational services, perform duties prescribed by the Legislature and determine how the education budget appropriated by the Legislature is spent." *See* filing 35 at 11. So, the plaintiff reasons that all of NDE's contracting power is derived from the Nebraska Legislature, and that includes the apparent authority to waive Eleventh Amendment immunity. *See id.* And, according to eScholar, the Commissioner had the authority to delegate that power to Deputy Commissioner Feis under § 79-301(3). *Id.*

But NDE argues that the general duties of the Commissioner of Education do not contain an express authorization to waive immunity. *See* filing 38 at 4. NDE also states that under *State ex rel. Brownell Bldg. Co. v. Cochran*, 205 N.W. 568, 569 (Neb. 1925), executive officers in Nebraska "have no general authority to contract in [sic] behalf of the state and the state will not be bound by their contracts in excess of the authority conferred by law." Filing 38 at 4.

---

[5] "The State Department of Education shall be comprised of a State Board of Education and a Commissioner of Education. The State Department of Education shall have general supervision and administration of the school system of the state and of such other activities as the Legislature may direct." Neb. Const. art. VII, § 2.

To begin, the Court is not persuaded that Deputy Commissioner Feis did not have authority to enter into the License Agreement and bind the State. Sections 79-301(3) and 79-305(3) confer upon the Commissioner of Education, as the executive officer of the State Board of Education, broad powers to provide services necessary for the statewide school programs and prepare and administer a budget, which necessarily includes the ability to contract for services. *See Yant v. City of Grand Island*, 784 N.W.2d 101, 110 (Neb. 2010). In addition, under Neb. Rev. Stat. § 79-318(5)(e) the State Board of Education, through the Commissioner, shall "prescribe a uniform system of records and accounting for keeping adequate educational and financial records, for gathering and reporting necessary educational data, and for evaluating educational progress." And NDE does not dispute that is the function of the Uniq-ID© software. Furthermore, *Cochran*, which NDE cites to purportedly limit the Commissioner's authority, was decided prior to the 1953 enactment of the statutes which expressly grant these broad powers. *See* Neb. Rev. Stat. §§ 79-301, 79-305, 79-306, 79-318.

The Court also concludes the Commissioner appropriately delegated that authority to Deputy Commissioner Feis. Section 79-306(3) provides "[t]he Commissioner . . . shall (1) have the authority to delegate administrative and supervisory functions to the members of the staff of the department." Feis is certainly a "member of staff" to whom the Commissioner can delegate administrative and supervisory functions. So, the Court concludes that the License Agreement, signed by Feis, is a valid exercise of legislatively delegated contracting authority under Nebraska law.

Finally, the NDE Contract Routing/Approval Form suggests that NDE also believed Feis had the authority to enter into the agreement. *See* filing 37-4. The form has a box checked next to the statement "[s]ufficient legal authority

exists to contract for these services," was signed by S. Summers as NDE's general counsel, and indicates that either the Commissioner or a Deputy Commissioner had to sign the contract. *See* filing 37-4. Thus, it is difficult for the Court to accept that both the State and NDE didn't contemplate Feis's approval of the License Agreement to bind the State to its terms.

But the next question is not quite as clear-cut: whether NDE, acting through Feis, had the authority to waive Eleventh Amendment immunity. NDE argue that *Lapides* does not control this question and should be narrowly construed. It asserts that this case is distinguishable because (1) its actions were not voluntary litigation conduct by a state attorney general and (2) it is an involuntary participant in this action. *See* Filing 38 at 5. Granted, the facts in this case are distinguishable from *Lapides*, but the Court is nevertheless unpersuaded that Feis did not have *at least* the apparent authority to waive Eleventh Amendment Immunity.

First, the Court turns to relevant Nebraska law.[6] In Nebraska, when a governmental agency is responsible for providing a service and has the power or legislative authority to contract for those services, its determination to enter into a contract for those services is a legislative act. *See Myers v. Nebraska Inv. Council*, 724 N.W.2d 776, 797-98 (Neb. 2006). So, because the Court has already concluded that Feis was acting pursuant to legislative authority to contract for services, that means that her actions *were* actions of the Legislature. And therefore Feis would have had the authority to waive

---

[6] Recall that whether a particular set of state laws, rules or activities amount to a waiver of Eleventh Amendment immunity is ultimately a question of federal law. *Lapides*, 535 U.S. at 623. But clearly the State's laws, rules and activities must be analyzed in order to reach that conclusion.

Eleventh Amendment immunity by voluntarily agreeing to the forum selection provision.

Furthermore, under Nebraska law, when the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be given their plain and ordinary meaning. *Kercher v. Bd. of Regents of Univ. of Neb.*, 860 N.W.2d 398, 405 (Neb. 2015). A contract must also receive a reasonable construction, must be construed as a whole, and if possible, effect must be given to every part of the contract. *Id.* In other words, a court should avoid a construction that renders a material provision meaningless. *Timberlake v. Douglas Cty.*, 865 N.W.2d 788, 795 (Neb. 2015); *see Kercher*, 860 N.W.2d at 405.

The Court rejects the argument that NDE raises for the first time in its reply brief that the forum selection clause is ambiguous. *See* filing 38 at 7-9. The language, "[t]he parties consent to the jurisdiction of the federal and state court of Nebraska for any legal action arising out of this Agreement," is absolutely clear. So, to construe the provision as NDE requests—as not being an unequivocal consent to the jurisdiction of the federal courts of Nebraska— would render the provision meaningless and go against well-established Nebraska contract law.

Now the Court turns to the relevant federal law. First, the underlying reasoning in *Lapides* counsels in favor of waiver. In addressing why voluntary litigation actions by a State waive Eleventh Amendment immunity, the *Lapides* Court said:

> [i]t would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, . . . and (2) to claim Eleventh Amendment immunity, thereby denying that the 'Judicial power of the United States' extends to the case at hand. And a

Constitution that permitted States to follow their litigation interests by freely asserting both claims in the same case could generate seriously unfair results.

535 U.S. at 619. It further explained that

an interpretation of the Eleventh Amendment that finds waiver in the litigation context rests upon the Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly, and unfairness, and not upon a State's actual preference or desire, which might, after all, favor selective use of 'immunity' to achieve litigation advantages.

535 U.S. at 620. So, according to the Supreme Court, when inquiring into whether a State made a clear declaration to submit to federal court jurisdiction, the inquiry must focus on the act the State takes that creates the waiver, and it concluded that the litigation act in *Lapides*—removal—was clear. *Id.*

The Eighth Circuit has also embraced the fairness analysis found in *Lapides*. In *Skelton v. Henry*, 390 F.3d 614 (8th Cir. 2004) the Eighth Circuit, citing *Lapides*, pronounced:

A state may waive its immunity from suit in federal court by voluntarily submitting its rights for judicial determination. Waiver in litigation prevents states from selectively invoking immunity to achieve litigation advantages. We focus on whether the state's action in litigation clearly invokes the jurisdiction of the federal court, not on the intention of the state to waive immunity.

*Id.* at 618 (citations omitted).

In the present case, the Court finds it inconsistent for NDE to enter into the License Agreement containing a clear and unambiguous consent to the jurisdiction of the federal court in Nebraska and then claim Eleventh Amendment immunity when actually haled into federal court for alleged contract violations. And it would be inconsistent and unfair for the Court to allow NDE to do so. Such action by the Court would appear to cater to the State's selective use of immunity to achieve litigation advantages.

The Supreme Court also discussed waiver of Eleventh Amendment immunity by statutory consent to suit and venue provisions in *Feeney*. There, New York and New Jersey had entered into a bi-state compact to create the Port Authority of New York and New Jersey to operate, among other things, an interstate railway system and terminal within the port of New York. 495 U.S. at 301. As part of the statutes establishing the Port Authority, both States passed two provisions governing suits against the Port Authority—one consenting to suit, and the other providing, in relevant part that:

> venue in any suit, action or proceeding against the Port Authority shall be laid within a county or a judicial district, established by one of said States or by the United States, and situated wholly or partially within the Port of New York District.

*Id*. at 302-303.

The Supreme Court held that the two provisions, read together, waived Eleventh Amendment immunity for claims against the Port Authority. *Id*. at 308-309. In doing so, the Court reasoned that any ambiguity in the consent to suit provision alone was resolved by the venue provision, and therefore eliminated the risk that a federal court would mistake having jurisdiction. *Id*.

at 307. And the Court also explained that "issues of venue are closely related to those concerning sovereign immunity, as . . . a State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Id.* at 307 (citation omitted). And finally, the Court noted that no other reasonable construction of the venue provision existed—either it could be given its natural meaning, which waived Eleventh Amendment immunity, or no meaning at all. *Id.* at 308.

Here, the State has waived immunity to contract claims through the State Contract Claims Act.[7] *See* Neb. Rev. Stat. § 81-8,302 *et seq*. And the State entered into a contract with a clear and unambiguous consent to the jurisdiction of the federal Courts of Nebraska. Read together, the statutory and contractual provisions eliminate any risk that a federal court would mistake having jurisdiction, similar to *Feeney*. So, the Court concludes that *Feeney* also counsels in favor of enforcing the forum selection clause as a voluntary and valid waiver of Eleventh Amendment immunity.

Since *Feeney* and *Lapides* were decided, only a few courts have addressed the *precise* question presently before the Court: whether Eleventh Amendment Immunity can be waived by a contractual forum selection clause. *See Pettigrew v. Oklahoma ex rel. Okla. Dep't of Pub. Safety*, 722 F.3d 1209 (10th Cir. 2013); *Baum Rsch. & Dev. Co., Inc. v. Univ. of Mass. at Lowell*, 503 F.3d 1367 (Fed. Cir. 2007); *Oracle Am., Inc. v. Or. Health Ins. Exch. Corp.*, 145 F. Supp. 3d 1018 (D. Or. 2015). And none of them are binding on this Court. Nevertheless, the

---

[7] The Court recognizes that the State Contract Claims Act requires certain procedures be followed before a plaintiff can sue the State in state court. *See* Neb. Rev. Stat. § 81-8,304. And, the State Contract Claims Act is said to "provide the exclusive remedy for resolving contract claims." § 81-8,306. However, the Act must be read together with the other Nebraska law, cited above, and the federal law governing waiver of Eleventh Amendment immunity.

Court is persuaded by the reasoning employed by the Courts, which each concluded that a State *could* voluntarily waive Eleventh Amendment immunity by a venue provision in a contract. *See Pettigrew,* 722 F.3d at 1216; *Baum,* 503 F.3d at 1371; *Oracle,* 145 F. Supp. 3d at 1035.

The case that is factually most similar is *Baum,* where an Associate Director of the University of Massachusetts at Lowell entered into a license agreement for a patent. 503 F.3d at 1368-69. The license agreement contained the following provision:

> III-3. Governing Law. This Agreement will be construed, interpreted and applied according to the laws of the State of Michigan and all parties agree to proper venue and hereby submit to jurisdiction in the appropriate State or Federal Courts of Record sitting in the State of Michigan.

*Id.* The University argued that the provision was ambiguous and not the type of unequivocal and voluntary waiver of immunity required by federal law. *See id.* at 1370. And the University argued that the Associate Director did not have authority to waive Eleventh Amendment immunity on behalf of Massachusetts—only the Massachusetts legislature did. *Id.* at 1371.

But relying on *Feeney*, the Federal Circuit concluded that the provision was an unambiguous mutual obligation to submit to the federal courts of Michigan and thus waived Eleventh Amendment Immunity. *Id.* at 1371. And the Federal Circuit also rejected the University's arguments that the Associate Director could not waive immunity. *See id.* at 1371-72. It explained that the University conceded the Associate Director had authority to enter into the contract. *Id.* at 1372. And it further reasoned that the University had occasion

to review the Director's actions and did not attempt to stop her from signing the contract with the venue provision. *Id.* at 1371-72.

The Federal Circuit ultimately affirmed the district court's reasoning, which relied on *Lapides* for the proposition that permitting a State (through its authorized agents) to enter into an otherwise valid contract with a forum selection clause that contemplates federal court jurisdiction and then later invoke sovereign immunity would allow it to "selectively hide behind the cloak of sovereign immunity when doing so would serve its litigation objectives," *Baum Rsch. & Dev. Co. Inc. v. Univ. of Mass. at Lowell*, No. 1:02-CV-674, 2006 WL 461224, at *5, (W.D. Mich.  Feb. 24, 2006) (citation omitted), *aff'd*, 503 F.3d at 1372.

The facts here are quite similar. NDE does not really contest that Feis had authority to enter into the contract, but rather claims that Feis exceeded her authority by waiving Eleventh Amendment immunity. However, the License Agreement was reviewed by S. Summers, general counsel for NDE, and while edits were made to other provisions of the contract, the forum selection clause was unchanged. Furthermore, the Contract Routing/Approval Form indicates that NDE believed there was sufficient legal authority for Feis to enter into the License Agreement. Finally, to allow NDE to enter into an otherwise valid contract with a clause that consents to federal court jurisdiction and later invoke sovereign immunity is unfair and allows it to selectively hide behind the cloak of sovereign immunity.

In summary, the Court concludes that NDE's consent to federal court jurisdiction through the forum selection clause in the License Agreement is a valid waiver of Eleventh Amendment Immunity. *See Lapides*, 535 U.S.at 623. The Court recognizes that the test for determining whether NDE has waived immunity is a stringent one, and that only the most clear and express language

may result in waiver. *See Feeney*, 495 U.S. at 305-06. And it recognizes that it must indulge every *reasonable* presumption against waiver. *See College Sav. Bank*, 527 U.S. at 682. But that most stringent test is overcome on the facts present here. The language of the forum selection clause is clear and unequivocal that NDE and eScholar both "consent to the jurisdiction of the federal and state court of Nebraska." And Feis had, at minimum, the apparent authority to bind the State to that clear and unequivocal waiver. What is good for the goose is good for the gander—where both NDE and eScholar consented to the jurisdiction of the federal courts, they must now submit to such jurisdiction. The State cannot bind eScholar to a venue while silently retaining for itself the unilateral ability to escape.

That conclusion does not, however, resolve the defendant's motion as to all of eScholar's claims against NDE. The forum selection clause waived Eleventh Amendment immunity as to "any legal action arising out of [the License] Agreement." eScholar asserts that its copyright infringement and Nebraska Trade Secrets Act claims arise out of the License Agreement and so Eleventh Amendment immunity has been waived as to all of its claims. *See* filing 35 at 13-15. The Court disagrees.

A claim arises out of a contract when it involves a breach of duty imposed by private agreement and protects a litigant's interest in or right to performance of another's promises. *See Henriksen v. Gleason*, 643 N.W.2d 652, 657 (Neb. 2002). The statutory claims raised by eScholar do not arise from a duty imposed by private agreement. They arise from a duty imposed by *statute*, the CRCA and the Nebraska Trade Secrets Act.

The authority cited by eScholar provides no assistance. Those cases suggest that when a license is violated a plaintiff may have a copyright claim, but *only if the breach implicates an exclusive statutory right* (e.g. reproduction).

- 20 -

*See MDY Indus. LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 939-40 (9th Cir. 2010); *see also Foxrun Workshop, Ltd. v. Klone Mfg., Inc.*, 686 F. Supp. 86, 89 (S.D.N.Y. 1988) (stating that an action for copyright infringement arises when a license has already been terminated or if the defendants acts are outside the scope of the license). But the allegations here do not implicate the scope of the license—that is, the State does not argue that the License Agreement permits its conduct. Indeed, it is difficult to see how the State *could* argue that, having terminated the License Agreement. Thus, the copyright claim arises under *statute* and not the agreement itself.

The question before the Court is not whether eScholar has stated a claim for copyright infringement or violation of the Nebraska Trade Secrets Act—it is whether the forum selection clause in the License Agreement waived Eleventh Amendment immunity as to those claims. And because neither of those statutory claims arise out of the License Agreement, Eleventh Amendment immunity has not been waived.

Accordingly, NDE's motion to dismiss will be granted as to eScholar's second, third, fourth and fifth claims—all of the which arise under the CRCA or Nebraska Trade Secrets Act. However, NDE's motion to dismiss will be denied as to eScholar's first claim, for rescission and breach of the License Agreement.

(b) *Ex Parte Young* claims against Folkers and Hastings

The plaintiff also suggests that the Court has jurisdiction under the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), which permits State officials to be sued in federal court for prospective injunctive relief when the plaintiff alleges the officials are acting in violation of the Constitution or federal law. *Idaho*, 521 U.S. at 269-70; *Monroe*, 495 F.3d at 594; *Missouri Child Care Ass'n v. Cross*, 294 F.3d 1034, 1037 (8th Cir. 2002).

Folkers and Hastings argue that eScholar's *Ex Parte Young* claims against them should be dismissed because they are named in their individual capacity and not their official capacity. *See* filing 32 at 6-7; filing 38 at 1-2. And defendants appropriately state that official capacity suits typically involve either allegedly unconstitutional State policies or unconstitutional actions taken by State agents possessing final authority over a particular decision. *Nix v. Norman*, 879 F.2d 429. But whether *Ex Parte Young* claims should name officials in their official capacity or individual capacity is less than clear.

For example, the Eighth Circuit has stated "under the doctrine set forth in *Ex Parte Young* . . . state officials may be sued in their official capacities. . . ." *Monroe*, 495 F.3d at 594; *Cross*, 294 F.3d at 1037. But the Supreme Court in *Idaho v. Coeur d'Alene Tribe of Idaho*, said:

> We do not, then, question the continuing validity of the *Ex Parte Young* doctrine. Of course, questions will arise as to its proper scope and application. In resolving these questions we must ensure that the doctrine of sovereign immunity remains meaningful, while also giving recognition to the need to prevent violations of federal law.
>
> When suit is commenced against state officials, *even if they are named and served as individuals*, the State itself will have a continuing interest in the litigation whenever state policies or procedures are at stake. This commonsense observation of the State's real interest when its officers are named as individuals has not escaped notice or comment from this Court, either before or after *Young*.
>
> . . .

To interpret *Young* to permit a federal-court action to proceed in every case where prospective declaratory and injunctive relief is sought against an officer, *named in his individual capacity*, would be to adhere to an empty formalism and to undermine the principle, . . . that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction. The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading.

521 U.S. at 269-70 (emphasis supplied).

So, the Court concludes that although Folkers and Hastings are named in their individual capacities, that the *Ex Parte Young* claims against them shall proceed under *Coeur d'Alene Tribe*. And to the extent that the plaintiffs are seeking prospective injunctive relief from violations of federal law, specifically under the CRCA, that relief will not be "sacrificed to elementary mechanics of captions and pleading." Accordingly, defendants' motion to dismiss eScholar's sixth claim against Folkers and Hastings will be denied.

## 2. PRELIMINARY INJUNCTION

Having decided that it has subject matter jurisdiction over eScholar's claim for breach of contract against NDE and *Ex Parte Young* claim against Folkers and Hastings, the Court now turns its attention to eScholar's motion for a preliminary injunction. eScholar maintains that because NDE has advanced no substantive arguments against its motion, it must be granted. Filing 35 at 3; *see also* filing 32 at 7-8. And NDE has requested that the Court grant it leave to respond to the motion through supplemental briefing. Filing 32 at 8. The Court finds merit in neither party's position.

First, as previously stated, a preliminary injunction is an *extraordinary* remedy and the party seeking injunctive relief bears the burden of proving that the relevant factors weigh in its favor. *MPAY Inc.*, 970 F.3d at 1015 emphasis supplied). So, even though NDE hasn't challenged the substance of eScholar's motion, it is eScholar that still bears the burden of proving that a preliminary injunction is appropriate. The Court concludes it has not.

The Court assumes, for the sake of argument, that eScholar has some reasonable chance to succeed on the merits—comparing the parties' respective software platforms is next to impossible at this stage of litigation, and as noted, eScholar's arguments in that respect are largely unopposed. But eScholar claims now, that "any third party . . . can simply come to the NDE web site and freely pirate critical elements of the eScholar Uniq-ID© system." Filing 6 at 13. And it further suggests that "nothing stops the NDE from freely distributing the [ADVISOR] system." Filing 6 at 14. But speculative harm or merely demonstrating the possibility of harm does not carry the burden of showing irreparable harm. *MPAY Inc.*, 970 F.3d at 1020.

Furthermore, the Court is not convinced that eScholar's injuries are not compensable with money damages. By its own admission, it has invested $15 million in the development of the Uniq-ID© software. *See* filing 6 at 13. And the parties previously contracted for the pecuniary value of a license to use eScholar's intellectual property. There is no reason it couldn't be done again. So, if eScholar ultimately proves that NDE has destroyed the value of its software by copying it and giving it away, its damages are calculable.

Finally, the Court must balance the equities and weigh the threat of irreparable harm shown by the movant against the injury that granting the injunction will inflict on the other parties. *Id.* (quoting *Dataphase Sys.*, 640 F.2d at 113). And it is not at all difficult to see how forcing NDE to shut down

its student tracking system (particularly in the midst of a pandemic that is already stressing the educational system in unprecedented ways) would damage both the NDE and the public, particularly when balanced against the speculative harms proffered by eScholar.

Simply put, the Court concludes that eScholar's alleged irreparable harm is purely speculative and any injury can likely be remedied through money damages. Therefore, eScholar's motion for preliminary injunction will be denied. Accordingly,

IT IS ORDERED:

1.  Defendants' motion to dismiss eScholar's amended complaint (filing 31) is granted in part.
2.  eScholar's claims against NDE for copyright infringement and violations of the Nebraska Trade Secrets Act are dismissed.
3.  Defendants' motion to dismiss is denied in all other respects.
4.  eScholar's motion for a preliminary injunction (filing 5) is denied.

Dated this 28th day of October, 2020.

BY THE COURT:

John M. Gerrard
Chief United States District Judge

- 25 -